

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2021

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *United States v. Joseph Ciaccio,* **19 Cr. 833 (SHS)**

Dear Judge Stein:

The Government respectfully submits this letter in connection with the sentencing of Joseph Ciaccio ("Ciaccio" or the "defendant"), currently scheduled for November 18, 2021, at 11:00 a.m.  As set forth in the parties' plea agreement dated March 1, 2021 (the "Plea Agreement"), the Government submits that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is 78 to 97 months imprisonment (the "Stipulated Guidelines Range").  The Probation Office has recommended that the defendant receive a sentence of time served and supervised release of two years.  (*See* Presentence Report dated July 1, 2021 ("PSR") p. 30).  For the reasons set forth below, the Government respectfully submits that a sentence of a significant term of supervised release is appropriate in this case.

I.      **Background**

A.  **Role in the Offense**

Since early 2016, the Government, in partnership from the New York City Police Department ("NYPD") and Homeland Security Investigations ("HSI"), has been investigating a large-scale telemarketing scheme targeting elderly and vulnerable victims (the "Victims") throughout the United States.  As the Court learned while presiding over the related case (and trial) in *United States v. Ketabchi,* 17 Cr. 243 (SHS), Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on false promises made by the *Ketabchi* defendants that the Victims would earn money through an "online business" created and managed by those defendants and their co-conspirators (the "Business Opportunity Scheme").  In fact, the businesses did not exist, and the Victims never made any money.

In the *Ketabchi* case, the Government prosecuted William Sinclair and Michael Finocchiaro for their role in operating Olive Branch Marketing, which sold business opportunity

products, and later Consumer Shield, which convinced Victims of the Business Opportunity Scheme to spend additional money on debt relief products.  Following the resolution of the *Ketabchi* case in late 2018, the Government's investigation shifted to those telemarketing sales floors that continued to operate in the New York and New Jersey area despite the *Ketabchi* case, including Corporate Development Center ("CDC") and Alliance Education ("Alliance" and, collectively "CDC/Alliance"), sales floors run by Ciaccio and Joseph Minetto, among others. Ciaccio and Minetto employed several individuals, among whom were co-defendants Mattie Cirilo, Derrek Larkin, and Joseph Depaola, who sold the so-called business services to Victims of the Business Opportunity Scheme and worked to prevent victims from receiving refunds on their investments.

In January 2019, HSI executed a search warrant at the CDC/Alliance office in Englewood, New Jersey, during which search HSI collected paper documents and electronic devices from the employees who were present.  Despite that law enforcement action, Ciaccio and Minetto persisted in operating the sales floor.  Ciacco served as a manager and supervisor during the course of the conspiracy, coordinating with other operators of sales floors as a part of the conspiracy was provided lists of victims or "leads" by those co-conspirators.

Ciaccio was arrested on November 20, 2019. Ciaccio pleaded guilty to wire fraud conspiracy pursuant to the Plea Agreement in March 2021.

### B.  The PSR and the Stipulated Guidelines Range

The parties have stipulated in the Plea Agreement, and the Probation Officer agrees, that the applicable Guidelines Range is 78 to 97 months' imprisonment.  (PSR ¶¶ 5, 101.)

### C.  Defense Submission

The defendant requests this Court sentence him to time served and two years' supervised release based upon the physical and emotional disabilities he has suffered as a result of a motorcycle accident, as well as his struggles with opioid addiction.

### II.    Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  *United States v. Booker*, 543 U.S. 220, 252 (2005).  Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."  *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)*.*  The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose.  *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id*. at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### III. The 3553(a) Factors Support the Imposition of a Significant Term of Probation

The Government agrees with the defendant and the Probation Office that a non-incarceratory sentence is appropriate in this case in light of the defendant's physical and mental impairments. However, the Government submits that a significant term of supervised release (*i.e.*, more than two years), rather than a sentence of time served and two years of supervised release, is necessary and appropriate, notwithstanding the defendant's severe physical and mental impairments, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. In addition, a significant term of supervised release would also

assure that the defendant has adequate support in his ongoing struggles with addiction and a sufficient incentive to remain drugfree.

The defendant was a manager in a widespread and sophisticated scheme in which Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on the defendants' false promises that the Victims would earn money through an "online business" created and managed by the defendant's co-conspirators.  In fact, there were no such businesses and the Victims never earned the money they were promised.  Due to his role in the scheme, defendant was undoubtably aware of the seriousness of the scheme and the harm it inflicted.  Ciaccio has been identified as a "Tier 1" defendant in a prior submission to this court, being one of the most culpable defendants due to his particularly egregious conduct in operating the sales floor.  (*See* Dkt. No. 309 at 2).

Several months prior to his arrest, Ciaccio was involved in a serious motorcycle accident that left him paralyzed from below the waist and requires him to receive constant medical care at in-patient rehabilitation centers.  His trauma included brain injuries as well, which have caused him to develop personality and behavior disorders in addition to the overall deterioration of his mental health in the aftermath of the accident.  The defendant requires assistance with basic functions such as going to the bathroom, and this will likely continue for the foreseeable future as medical experts maintain that the chance of recovery is low.  The defendant's efforts at recovery have been further complicated by his serious opioid addiction.  Thus, while a defendant's medical condition and drug addiction would not ordinarily warrant the sentencing variance proposed the defendant and Probation here, Ciaccio's physical and mental condition is unique, even among defendants with serious medical conditions, and leads the Government to conclude that incarceration would not serve the interests of justice in this case.  To be clear, absent the defendant's extraordinarily severe medical and mental health issues as a result of the motorcycle accident, an incarceratory sentence within applicable the Guidelines Range would have been appropriate.

The seriousness of the defendant's conduct and his repeated violations of the terms of his pretrial release, however, require a more substantial sentence than the sentence the defendant seeks of time served and two years of supervised release.  The defendant played a prominent role over several years in a conspiracy to defraud elderly victims and inflicted extreme losses on them.  This Court should instead impose a sentence that includes a significant term of supervised release of longer than two years.  Such a sentence would adequately take into account the defendant's health challenges and also afford adequate deterrence from future criminal conduct, such as illicit drug use, and promote respect for the rule of law.

**IV.     Conclusion**

In light of the foregoing, a sentence of a significant term of supervised release would be sufficient but not greater than necessary to serve the aims of sentencing in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     _____
Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238/2616/6522

Cc:  Counsel of Record (by ECF)