```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          19 CR 833 (SHS)

 5   JOSEPH CIACCIO,

 6                   Defendant.            Sentence
                                           (via Microsoft Teams)
 7   ------------------------------x

 8                                         New York, N.Y.
                                           November 18, 2021
 9                                         11:10 a.m.

10   Before:

11
                         HON. SIDNEY H. STEIN,
12
                                           District Judge
13
                              APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  ROBERT SOBELMAN
          Assistant United States Attorney
17
     SULLIVAN & CROMWELL, LLP
18        Attorneys for Defendant
     BY:  NICOLE W. FRIEDLANDER
19        TREVOR A. CHENOWITH

20

21

22

23

24

25
```

1              (Case called)

2              MR. SOBELMAN:  Robert Sobelman, United States.  Good

3    morning, your Honor.

4              THE COURT:  Good morning.

5              MS. FRIEDLANDER:  Nicole Friedlander, Sullivan &

6    Cromwell, for the defendant, Joseph Ciaccio.  With me is Trevor

7    Chenowith an associate at my firm, and I'll note Mr. Ciaccio is

8    present as well.  Good morning.

9              THE COURT:  Good morning.

10             Mr. Ciaccio, can you hear me and see me, sir?

11             THE DEFENDANT:  Yes, your Honor.  Good morning.

12             THE COURT:  Who is that with you, sir?

13             THE DEFENDANT:  This is Trevor.

14             MS. FRIEDLANDERP:  Good morning, your Honor.  I'm an

15    associate of Nicole's.

16             THE COURT:  Good morning.  One of you is wherever

17    Ms. Friedlander is and you, sir, are where the defendant is, is

18    that correct?

19             MR. CHENOWITH:  That's correct, your Honor.

20             THE COURT:  Mr. Ciaccio, do you understand, sir, you

21    have a right to appear physically before me in a courtroom in

22    the Southern District of New York for this sentencing?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  You also understand that you have the

25    right to speak directly in the courtroom to me, and you also

have the right to have your lawyer right next to you, which you

do, because he is right next to you, but you are not before me

and you can't speak physically in front of me.  Do you

understand that, even though you have that right?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the COVID-19

pandemic has restricted access to the courthouse?

THE DEFENDANT:  Yes.

THE COURT:  Congress has authorized the use of

videoconferencing for sentencings if the need arises and it's

reasonably available.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You can have this sentencing adjourned

until the end of the pandemic, if you wish, or, if you wish to

waive the rights I have set forth, we can proceed now.

What do you prefer, sir?

THE DEFENDANT:  I would like to proceed now, sir.

THE COURT:  I accept that, sir.  And I do make the

finding that this sentencing should not be further delayed and

cannot be further delayed without serious harm to the interests

of justice.

Let me tell you what I have, lady and gentlemen.  I

have the presentence report, which was revised on July 1 of

this year, along with the sentencing recommendation and the

addendum.  And the sentencing recommendation on a total offense

1   level of 27 in a criminal history category of II is for an

2   enormous variance from the guideline range of 78 to 97 months

3   down to time served along with supervised release of two years

4   and other recommendations of the probation department.

5           I also have the submission of the government, dated

6   November 12, in which the government asks for a significant

7   term of supervised release.

8           I also have the amended sentencing memorandum of

9   Mr. Ciaccio.  It's document 387 with an extensive list of

10  medical records and other materials.

11          Then on November 16, I received a submission from

12  Ms. Friedlander notifying me that Mr. Ciaccio had been turned

13  down for public housing, and I also received a sheaf of family

14  photographs, I take it, from Mr. Ciaccio's family.

15          Is there any additional information I should have,

16  Ms. Friedlander?

17          MS. FRIEDLANDER:  No, your Honor.  We would just ask

18  that Exhibit 15, which we just submitted, the photographs of

19  Mr. Ciaccio and his children, be filed under seal because they

20  include images of minor children.

21          THE COURT:  Is that a basis for sealing?

22          MS. FRIEDLANDER:  I understood that it was.

23          THE COURT:  I have no objection if that's what the

24  defense wants.  They are rather nice pictures.  But if the

25  defense wants, it's fine with me.

1            Mr. Sobelman, what is your position?

2            MR. SOBELMAN:  We have no objection to the request,

3  your Honor.

4            THE COURT:  They will be filed under seal.

5            Ms. Friedlander, have you had a full opportunity to

6  read and discuss this information with your client and have you

7  in fact read and discussed it with him?

8            MS. FRIEDLANDER:  Yes, your Honor.

9            THE COURT:  Mr. Sobelman, is there any written

10  information I should have apart from that which I have set

11  forth here?

12            MR. SOBELMAN:  No, your Honor.

13            THE COURT:  Do you have any objections to the findings

14  of fact in the presentence report?

15            MR. SOBELMAN:  No, your Honor.

16            THE COURT:  Ms. Friedlander, do you?

17            MS. FRIEDLANDER:  No.  Thank you.

18            THE COURT:  I am going to adopt the findings of fact

19  in the presentence report.

20            This is an extraordinary case, obviously.  No one

21  would want to be in the position Mr. Ciaccio is in.  But the

22  fact still remains he committed a substantial federal felony

23  and a penalty is appropriate.

24            Ms. Friedlander, my recollection is, from our past

25  conferences, which have been on video, that there was a

disconnect in terms of some information I was receiving.

On the one hand, the medical information characterizes your client as a paraplegic that's likely to remain that way for the rest of his life and he will need 24-hour care.

On the other hand, there was talk last time from your client about his moving into a home that was adapted for wheelchair use, and I have conflicting information regarding the family situation as well.

Tell me, from the defense standpoint, what's happening with Mr. Ciaccio?  I see he was rejected for public housing. I'm not sure what that means, but it certainly suggests he is not going to be in a 24-hour-a-day health care setting.

MS. FRIEDLANDER:  Thank you, your Honor.  Happy to address it.  I don't think the information is conflicting, but it certainly requires explanation.

Mr. Ciaccio, he is paraplegic, but that is only a part of the issues that he deals with.  He is subject to frequent medical conditions, bed sores and the like that develop rapidly, can become life threatening quickly and, when they develop, require hospitalization or 24-hour treatment.  So he is currently in a facility now that is trying to address bed sores that he developed.  He has been there for many months. The wounds are terrible.  They are not healing.  The doctors think he will require surgery in order to repair them.

The hope, your Honor, is that Mr. Ciaccio can

rehabilitate to a point where he's capable of living outside of
a facility, like a place Lehmann Gardens, the public housing
facility he had applied to.  He is not able to do that today.
He is not expected to be able to do that for months, if ever.
I don't really know.  I don't think anyone really knows when he
would be able to leave.  But he had applied to Lehmann Gardens.
They have a waiting list, your Honor, for apartments, and Joe's
hope had been to put himself on the waiting list so that by the
time an apartment came up that he would be in a position to
accept one.

He has learned that he has been denied for that, in
part, because we were told, speaking to counsel for Lehmann
Gardens just this week, that you have to be ready to move in in
order to be considered or accepted for housing there.  Because
he's far from being physically medically able to live on his
own, they wouldn't consider him, at least now.

They also said that his history of drug use or his
more recent issues with drug use or attempting to get drugs
would be an issue for them, and they would like to see him
develop a longer record of drug-free life in order for him to
be accepted.

So he has not been denied with prejudice.  We hope and
expect that he will be accepted for an apartment there and that
he will be physically capable of living on his own and he can
apply and be accepted there, but he is not in that position

1    today, your Honor, or frankly even close to it.

2            THE COURT:  Tell me whatever it is you want me to

3    know.

4            MS. FRIEDLANDER:  Thank you, Judge.

5            I'd like to start by saying that Mr. Ciaccio accepts

6    responsibility for his conduct.  He is deeply sorry for it.  He

7    recognizes that he helped to take advantage of a vulnerable

8    population.  Joe himself is now a part of a vulnerable

9    population as a result of his accident, and he appreciates

10   acutely the risks and the dangers associated with that.

11           I know that Joe plans to address the Court today, and

12   I will leave it to him to speak to your Honor directly on that

13   subject.

14           THE COURT:  I must say, not only the crime itself

15   concerns me, but that's over, and I really doubt that he is

16   going to go back to anything like that.  So I don't think

17   individual deterrence is a real issue.

18           The general deterrence might be.  Punishment is --

19   although he seems to be punished through other means, that is,

20   paraplegia.  I don't mean to make a connection there.

21           But his drug use does concern me.  Apparently, there

22   is easy access or relatively easy access to drugs at these

23   facilities.  You've seen the memo or memos from the probation

24   department.  I'm not quite sure how to deal with that.  That

25   is, if he continues his drug use, and indeed that's one of the

reasons I think that the government is seeking a longer term of

supervised release, if he continues the drug use while on

supervised release, and it's apparently fairly easy to locate

because he gets blood tests or intravenous, or apparently you

can't hide taking drugs in the medical regimen he is under.

That, of course, of necessity, would lead to some action by the

Court.  I am not sure what that would be, but it would have to

be punitive in part so it's -- I am not quite sure what the

answer is.

MS. FRIEDLANDER:  Your Honor, we recognize the

problem, and the Court has raised the problem before.  You

raised this issue when we met in July.  We had a bail

revocation hearing and the Court raised this exact challenge.

I think both parties recognize the challenge here.

When we met in July, the Court told us it was going to

want to understand the options for sentencing here, the risks

and the benefits, if any, of sentencing Mr. Ciaccio to

incarceration, including at a federal medical facility like

Butner.

Specifically with regard to the drug issue that is

foremost in all of our minds, or at least one of the foremost

issues in our mind, your Honor in response, we hired experts to

try to help the Court and help us answer those questions.

So we consulted Dr. Stuart Kahn, who is a clinical

expert, the director of interventional pain and rehabilitation

1  at the Orthopedic Spine Center at Mt. Sinai, and we consulted

2  Maureen Baird, who is an expert prison consultant with 27 years

3  of prison experience.  She was the warden at several prisons.

4          Your Honor, we asked them to -- we gave them the

5  background.  They reviewed relevant records and they spoke with

6  each other because Dr. Khan is a medical expert who appreciates

7  the risks and the needs of Mr. Ciaccio, and Ms. Baird

8  understands better what federal prisons are capable of

9  providing.

10          I just want the Court to know that we did not advocate

11  for a position with these experts.  It's true Mr. Ciaccio

12  doesn't want to go to a prison facility.  They are aware of

13  that.  But we did not ask them to put together the best

14  argument for why he ought not to.

15          We understand Mr. Ciaccio could face life-threatening

16  risks, whether he is incarcerated or not.  Frankly, we didn't

17  want to put our finger on the scale.  Although, as I said, they

18  know he doesn't want to go to a facility, we told them that we

19  just want to know what they think is the right outcome here and

20  the real risks and benefits on both sides, because we really

21  want to get this right, and there are risks no matter what

22  sentence the Court imposes today.  We told them that that's

23  what you are looking for, is their expert guidance on what you

24  ought to do in a difficult situation where no answer is right

25  and without risk.

1          Your Honor has read the sentencing submissions.  You

2     have seen that they are strongly of the view that the dangers

3     to Mr. Ciaccio are far greater in the federal system, including

4     with respect -- specifically with respect to the drug

5     counseling and treatment that he needs.  So I can tell you that

6     is the view of experts, both the prison expert and the doctor.

7     That's what we would point to.  That's why we hired them, your

8     Honor, just to help you on this question.  But we recognize

9     that there is risk all around.

10          As to the appropriate sentence, as you said it's

11     obviously an unusual case.  For all the reasons set forth in

12     our sentencing submission, we believe and, obviously the

13     government and probation don't disagree, that a

14     nonincarceratory sentence would be appropriate, including with

15     special conditions of mental health and drug counseling and

16     treatment.  It is the sentence we ask the Court to impose

17     today.  We would ask the Court to depart under 5H1.4 of the

18     guidelines and impose that sentence.

19          THE COURT:  Let me cut you off because that's one of

20     the technical questions I had.  You're asking for a departure

21     rather than a variance?

22          MS. FRIEDLANDER:  I am not sure if I'm using the

23     correct language.  I think, under 5H1.4, Mr. Ciaccio qualifies

24     for a downward departure.  I think the effect is the same,

25     whether you say his guidelines are 78 to 97 months and I'm

1    going to impose a nonguidelines sentence, or you say, I am

2    going to depart under 5H1.4 and instead of a guidelines of 78

3    to 97, I am going to find that it's time served.

4          I don't feel strongly, Judge, about which avenue the

5    Court takes.  I just think, as we read 5H1.4 and the case law,

6    it seems to us that Mr. Ciaccio qualifies under this extremely

7    rarely used, unusual and rarely used provision.

8          THE COURT:  Thank you.

9          Mr. Sobelman, what is the position of the government?

10   The position stated in your submission is, I believe, a

11   variance, again, probably technical, but a variance to time

12   served, and I think you say a substantial period of supervised

13   release, is that right?

14         MR. SOBELMAN:  Yes, your Honor, that's correct.

15         THE COURT:  What's a substantial period of supervised

16   release and why?

17         MR. SOBELMAN:  I think in excess of the two years that

18   has been asked for by the defendant and recommended by the

19   probation office.  We think that two years is insufficient.

20         Principally, it's the reason your Honor flagged

21   earlier, which is our genuine concern for the safety and

22   well-being of the defendant.  We also have some concern not

23   that he will engage in the same criminal conduct, but we want

24   to make sure he has adequate supervision in the coming years to

25   make a transition to living a law-abiding life, both with

respect to drugs and otherwise, and particularly where had it

not been for his medical condition, we would anticipate that we

would have sought, and the Court likely would have imposed, a

fairly lengthy term of imprisonment.  A short term of

supervision, two years or less, we think, is insufficient here.

          THE COURT:  Help me.  What's the purpose of three,

four, five years rather than two years?  What goal is

accomplished?

          MR. SOBELMAN:  Your Honor, we think the defendant

should have the support and mentorship and person looking over

his shoulder from the probation office for a lengthier period

of time, in light of the amount of time he spent committing the

instant offense, the time since his arrest that he struggled to

remain in compliance with the restrictions imposed on him, and,

of course, your Honor has the discretion -- if two years go by

and there is no issue, your Honor would certainly have the

discretion at that point to terminate his supervised release

early.  But we would prefer, at least at the outset, a longer

term of supervised release being imposed in order to make sure

that, if it is required, fair.

          THE COURT:  Thank you.

          Mr. Ciaccio, you don't have to say anything, but if

you want to talk to me, here I am on MS Teams ready to hear

whatever you have to say.

          THE DEFENDANT:  Thank you, your Honor.

1        I apologize for having to read my statement.  But,

2   unfortunately, one of the major effects from my accident is

3   memory loss.  I have a hard time retaining things, so it helps

4   me to write it.

5        THE COURT:  That's perfectly all right.  This is being

6   recorded.  We do have a reporter on the line.  When people

7   read, they often speed up, so just go slowly so the reporter

8   can take it down.

9        THE DEFENDANT:  OK.

10        First, I want to say good morning, your Honor.

11        I would like to start by sincerely apologizing to all

12   the victims for my actions and decisions.  I want to take full

13   responsibility for my actions and have accepted my involvement

14   in this crime.

15        I'm not the same man I was two years ago.  I have

16   changed both physically and mentally due to my accident.  I

17   have been stripped of any dignity I had left as a person.  Not

18   only have I lost the ability to walk or care for myself

19   physically, but the path that I chose that brought me here

20   today, I was greedy, I was arrogant, and selfish.

21        I've had a lot of time to think and be with my

22   thoughts and the pain that I caused the victims is

23   immeasurable.  I want to make my wrongdoings right and show the

24   Court that I am capable of doing so.

25        Part of that means apologizing today and part of it is

1    recognizing that an apology is just the beginning because being

2    responsible for bad behavior means you don't repeat it.  I want

3    the Court to know that I am committed to doing the right thing

4    moving forward.

5            I am the father of three young children, your Honor.

6    I'm also a husband and a son.  My actions have affected them

7    already so much, and their lives have been forever changed.  A

8    huge motivation to work so hard at rehabilitating from my

9    accident are my wife and kids.  I am determined to become the

10   husband and father that they both deserve.

11           As your Honor knows, I have had issues with addiction

12   in the past, but I've also shown that I can overcome it.  I was

13   sober for five years until shortly before my accident, and I'm

14   willing to work extremely hard at maintaining my sobriety

15   moving forward.  I attend AA meetings currently on average of

16   about five times a week.  Between doing step work, fellowship

17   and working with the sponsor, the meetings are incredibly

18   helpful for me in achieving and maintaining long-term sobriety.

19           I would finally like to thank the Court for your time

20   invested in this case and the opportunity to address the court

21   today.  I am deeply sorry and remorseful for my actions and

22   hope that I can make this right thank you for your time, your

23   Honor.

24           THE COURT:  Thank you.

25           In all of this discussion I don't want the magnitude

1    of your criminal wrongdoing to go unremarked.  You managed a

2    sales floor which, as you know, I'm familiar with the

3    conspiracy and that you managed it for a considerable period of

4    time.  A lot of people were defrauded.  That's very serious

5    wrongdoing.  I don't think you are going to do it again.

6    That's for sure.

7             Mr. Sobelman -- I'll address this to both of you.  I

8    see that the forfeiture, the recommended forfeiture, is over a

9    million dollars.  Have I signed a preliminary order of

10   forfeiture in this case already?

11            MR. SOBELMAN:  Your Honor, I know we have a version

12   that was signed by the parties.

13            THE COURT:  The reason I ask that is, I don't think I

14   have.

15            MR. SOBELMAN:  Your Honor, I can submit it by e-mail

16   to the Court right now.

17            THE COURT:  Ms. Friedlander, do you have any

18   additional information?

19            MS. FRIEDLANDER:  I don't offhand, your Honor.  I

20   don't recall seeing a signed preliminary order.

21            THE COURT:  Is the order you are going to submit

22   signed by the parties and is it for $1,140,887.53, sir?

23            MR. SOBELMAN:  It's signed by the parties.  I just

24   want to confirm the amount.  $1,140,887.53.

25            THE COURT:  Yes.  E-mail that to my deputy.

1           MR. SOBELMAN:  Yes, your Honor.

2           THE COURT:  What's the parties' position on

3    restitution?

4           MR. SOBELMAN:  Your Honor, we would ask for a

5    reasonable period of time in order to submit a restitution

6    order.

7           THE COURT:  What's the position of the defense?

8           MS. FRIEDLANDER:  No objection, your Honor.

9           THE COURT:  Does statute give you 90 days?  Is that

10   correct, Mr. Sobelman?  Is it 60 or 90?

11          MR. SOBELMAN:  It's 90, your Honor.

12          THE COURT:  You'll have 90 days.  Get it to me

13   beforehand and let me know.  I assume it will be joint and

14   several with the other codefendants here.  I think that would

15   be appropriate.  Let me know if Ms. Friedlander has consented

16   to it.

17          MR. SOBELMAN:  We will, your Honor.

18          THE COURT:  The judgment will say that the parties

19   have 90 days to submit an appropriate restitution order.

20          I think the request for supervised release, lengthy

21   term of supervised release, makes most sense.  If indeed

22   Mr. Ciaccio is going to be leaving the long-term health care

23   facility, I am not sure it makes that much sense if he's in the

24   24-hour care facility.

25          But I am not going to sentence this man to prison.  It

1    makes no sense.  If anything, it would simply be shifting the

2    costs of his medical care from Medicare or Medicaid to the

3    Bureau of Prisons.  I think it would be a confinement that's

4    not needed, given his extreme physical limitations and a

5    punishment that's not needed.

6            I am going to follow the recommendations of the

7    probation department and, for that matter, the parties.  I will

8    make it a departure, as opposed to a variance.  There is a

9    difference.

10           The departure will be under 5H1.4 for physical

11   condition and, obviously, Mr. Ciaccio's physical condition is

12   paraplegia grade A in which he is paralyzed from the waist

13   down, and the prognosis is that he will not walk again or

14   independently care for himself.

15           I certainly hope you beat that prognosis, Mr. Ciaccio,

16   and I wish you as great a recovery as possible.

17           But I do make the finding that his paraplegia, in

18   combination with his other characteristics, including his drug

19   dependency, is present here to an unusual degree and

20   distinguishes this case from the typical cases covered by the

21   guidelines and considered by the United States Sentencing

22   Commission.  So this is a departure under 5H1.4.  The Court

23   fully understands that 5H1.4 is a policy statement.  It is not

24   binding on the Court in any way and, in addition, the Court

25   understands that the guidelines themselves are not binding but

1   are simply advisory.

2          I do intend to impose the other conditions recommended

3   by the probation department.  I will make supervised release,

4   however, two years.  I think that is appropriate.

5          Before I formally impose sentence, Ms. Friedlander,

6   does the defense have any objection?

7          MS. FRIEDLANDER:  No, your Honor.  Thank you.

8          THE COURT:  Mr. Sobelman, does the government have any

9   objection?

10         MR. SOBELMAN:  No, your Honor.

11         THE COURT:  My deputy has just handed me a consent

12  preliminary order of forfeiture.  There you are, the wonders of

13  the Internet.  Let me look at it.  I guess that's not the

14  Internet.  That's simply e-mail.

15         I do have a proposed and consented-to preliminary

16  order of forfeiture.  I see it looks like Ms. Kearney's

17  signature on it, yes, and Mr. Ciaccio's, by Ms. Friedlander,

18  and Ms. Friedlander's signature.  I am going to sign it and I

19  believe, with the filing of the judgment in this case, it

20  becomes a permanent order of forfeiture.

21         I will now impose sentence.  I find the total offense

22  level is 27, the criminal history category is II.  The

23  guideline range is 78 to 97 months.  Pursuant to the Sentencing

24  Reform Act of 1984, it is the judgment of this Court that the

25  defendant, Joseph Ciaccio, is committed to time served, is

1    sentenced to time served, and he shall be now placed on

2    supervised release for a term of two years with the conditions

3    recommended by the probation department, namely, mandatory

4    conditions set forth at page 39 of the presentence report, plus

5    the standard conditions set forth on page 40 and 41 of the

6    presentence report, plus the special conditions set forth on

7    page 41 of the presentence report, specifically testing to

8    determine whether the defendant has reverted to using drugs or

9    alcohol, as well as outpatient mental health treatment, as well

10   as a search condition, and he may not incur new credit charges

11   or open additional lines of credit, and he must provide his

12   probation officer with access to all requested financial

13   information.  He will be supervised by the district of

14   residence.

15         I'm not imposing a fine because I find Mr. Ciaccio

16   lacks the ability to pay a fine after taking into account the

17   imposition of the financial penalties of restitution,

18   forfeiture, and the special assessment.

19         As I say, I have just now imposed a forfeiture of

20   $1,140,877.53.  The government shall submit an agreed-upon

21   restitution order within 90 days of the entry of the judgment

22   in this case.  If the parties fail to agree, the parties can

23   submit opposing proposals.  I want that submitted to me before

24   the 90 days.

25         I also order Mr. Ciaccio to pay to the United States a

1    special assessment of $100, which is due immediately.

2         I have sentenced the defendant below the guideline

3    range on the basis of that departure. I have set forth the

4    reason for the departure on the record. I believe the sentence

5    is appropriate, given the seriousness of the offense and the

6    need for punishment and deterrence.

7         Ms. Friedlander, are you aware of any legal reason why

8    this sentence should not be imposed as I have stated it?

9         MS. FRIEDLANDER: No, your Honor.

10        THE COURT: Mr. Sobelman.

11        MR. SOBELMAN: No, your Honor.

12        THE COURT: I hereby order the sentence to be imposed

13   as I have stated it.

14        Mr. Sobelman, was there a limited waiver of appeal

15   rights in the plea agreement here?

16        MR. SOBELMAN: Yes, your Honor.

17        THE COURT: Mr. Ciaccio, you have the right to appeal

18   this sentence I just imposed on you, sir. If you cannot pay

19   the cost of an appeal, you have the right to apply for leave to

20   appeal *in forma pauperis*.

21        I do wish to inform you, sir, that in your plea

22   agreement you agreed to waive the right to appeal the sentence,

23   and you agreed to waive the right to collaterally attack the

24   sentence if I sentence you to 97 months or below. I most

25   certainly have done that because I have sentenced you to time

1    served on the basis of a departure.

2        Mr. Sobelman, are there open counts or underlying

3    instruments here?

4        MR. SOBELMAN:  No, your Honor.

5        THE COURT:  Mr. Ciaccio, I don't know what I can tell

6    you.  I think what you have to do is concentrate on your

7    family, concentrate on your health, do the best you can to get

8    out of the 24/7 care facility.  I think getting into a home of

9    your own with your family will be very important for your

10   physical and your mental health.  I don't think you are going

11   to commit this crime again.  Obviously, stay as far away from

12   any criminal wrongdoing.  I won't say that.  What I'll say is,

13   stay completely away from any criminal wrongdoing.  Do you

14   understand that?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  I can't do anything for you now, sir.  The

17   probation department will make sure you stay off of drugs.  But

18   everything else has got to be up to you.  So you've got to dig

19   deep into yourself and find the strength to stay off drugs and

20   to keep as solid a relationship with your children and your

21   wife as you can.  Do you understand that?

22       THE DEFENDANT:  Yes, your Honor.  Thank you.

23       THE COURT:  Mr. Sobelman, anything else?

24       MR. SOBELMAN:  No, your Honor.

25       THE COURT:  Ms. Friedlander, anything else?

```
 1              MS. FRIEDLANDER:  No, your Honor.  Thank you.

 2              THE COURT:  The Court is leaving the call.

 3              Mr. Ciaccio, I don't want to see you again.  I don't

 4     mean that negatively.  What I mean is, I don't want to see you

 5     for violation of supervised release.  I am not sure what I

 6     would do or what I can do, but I know I would have to do

 7     something.  I don't mean that as a threat.  What I mean is, I

 8     want you to have the most comfortable living situation you can.

 9     I don't think it would help anything to send you to prison.  If

10     that's the only option, I may have to take that.  Let's avoid

11     all of that.  OK.  Stay away from drugs.  Thank you.

12              The Court is leaving the call.  Good luck to you, sir.

13              THE DEFENDANT:  Thank you.

14              (Adjourned)

15

16

17

18

19

20

21

22

23

24

25
```